# LEWIS HOOPES, Respondent, *v.* NATHAN MEYER, Appellant.

The statute requiring statements on motion for new trial to contain the grounds of such motion is merely directory. A statement not made strictly in compliance with the spirit of the law as to the grounds of motion, will still entitle the moving party to a hearing.

The Constitution confers jurisdiction on the District Courts to hear and determine actions of forcible entry and detainer without any special legislative enactment on the subject.

The offense is described by a statute still in existence. The proof to be made, the manner of proceeding on the trial, etc., are all prescribed either by the Forcible Entry Act or the general Practice Act.

The Act in regard to forcible entrys, etc., prescribes what judgment a Justice may enter. The jurisdiction being transferred to another Court, that Court may enter the same judgment.

The Forcible Entry Act, so far as the same defines forfeitures, etc., is in force so far as it prescribes the Court to have jurisdiction; it is superceded by the Constitution.

The repeal of the Act takes away the right to impose a fine for its violation, but does not deprive parties of their rights acquired by contract under the law whilst it was in existence.

A denial that a demand was made on a certain day *as alleged* is a denial that the demand was made on the particular day stated in the complaint, when the statement of the demand is not qualified as to the manner of its being made.

Our statute does not require a demand for rent to be made on the premises at a late hour of the day the same falls due in order to produce a forfeiture of the premises rented. The only demand required is the written demand for the money, which must be made after the rent has been three days due.

If the material *facts* stated in the complaint are denied in the answer, or if other facts are stated in avoidance, it is not necessary to deny mere conclusions of law.

The instruction that "the title of a tenant in common is not paramount to that of his co-tenant," was calculated to mislead and was therefore erroneous.

The expression that a tenant can only excuse himself from paying rent when evicted by paramount title, means that he can only excuse himself when he is kept out of possession by one who has a legal right to do so, and not a mere trespasser against whom he has his remedy.

If a party hold a lease from one of two tenants in common for certain premises, and the other tenant in common afterwards takes possession of a part of the common

property, the lessee has no remedy against him and will be entitled to an abatement *pro tanto* in his rent.

Evidence tending to show the defendant was kept out of possession of part of the leased premises by a tenant in common of the lessor or his agent should have been admitted.

When rent is fixed at a certain rate for a definite period, an agreement without consideration to reduce the rent during that period is void.

Our statute seems to contemplate that treble damages, to some extent, should be rendered against a delinquent tenant for holding over, but it fails totally to define or point out what shall be trebled. Whether it shall be treble damages for the time during which the defendant may have held over unlawfully after rent demand, treble the amount of the last installment of rent which may have fallen due, or treble the amount of all past installments of rent which have not been paid. In the absence of all law showing what shall be trebled, held that there can be no treble damages.

The defendant is entitled to a credit as against his landlord's demand equal to the total value of that part of the premises of which he was deprived by the co-tenant of his lessor.

APPEAL from the District Court of the First Judicial District, State of Nevada, Ormsby County, Hon. RICHARD RISING presiding.

The facts of this case are stated in the opinion of the Court.

*Williams & Bixler,* for Appellant, filed the following assignment of errors:

*First*—The District Court, in the absence of any statute applying to and governing this class of cases in respect to that Court, could not entertain jurisdiction of the action.

*Second*—If the District Court had power originally to entertain the case, it lost that power by the repeal of the Act of 1861, concerning forcible entries and unlawful detainers.

*Third*—Error in the Courts, refusing defendant's motion for a nonsuit.

*Fourth*—Error in granting plaintiff's motion to strike out all testimony as to an eviction by Max Walter.

*Fifth*—Error in granting plaintiff's instructions No. 2.

*Sixth*—Error in granting plaintiff's instructions No. 4.

*Seventh*—Error in refusing defendant's instructions marked 1°.

*Eighth*—Error in refusing defendant's instructions marked 2°.

*Ninth*—Error in withdrawing the Court's own instruction.

*Tenth*—Error in granting plaintiff's motion for judgment *non obstante veredicto*, increasing the damages from seven

hundred and fifty dollars, as found by the jury, to twelve hundred dollars.

*Taylor & Campbell*, for Respondent, filed the following points and authorities:

*First*—The judgment of the Court below should be affirmed (unless error appears on the judgment roll) because the transcript on appeal contains no specification of the grounds upon which appellant intends to rely. (Practice Act, secs. 195 and 276; *Barrett* v. *Tewksbury*, 15 Cal. 356; *Reynolds* v. *Lawrence*, 15 Ib. 361; *Nixon* v. *Bear River and Auburn Water and Mining Co.*, 24 Ib. 372; *Walls* v. *Preston*, 25 Ib. 61.)

*Second*—There is no error appearing upon the judgment roll. (Practice Act, sec. 203.)

In our view the above points should dispose of this appeal in our favor; but if the Court will look further than the judgment roll and examine into the supposed errors alleged in the "assignment of errors" filed, although the same are not specifically set forth in the statement as ground upon which appellant will rely; then,

*Third*—The District Court, by virtue of the State Constitution, had jurisdiction of the action when it was commenced, and retained its jurisdiction, notwithstanding that the Act of March 8, 1865, concerning unlawful holding over of lands, etc., conferred jurisdiction in such cases upon Justices of the Peace. (Const., State of Nev., Art. VI., sec. 5; Ib., sec. 6; Ib., Art. XVII., sec. 2; Laws of Nev. Territory, 1861, p. 422, secs. 639–660; *Adams & Co.* v. *Town*, 3 Cal. 249.)

*Fourth*—The motion for nonsuit was properly denied; every material allegation of the complaint being admitted by the answer, no proof was required to be made by the plaintiff.

*Fifth*—The motion to strike out the testimony as to the eviction by Max Walter was properly granted.

No proof could be properly allowed under the plea of eviction in the answer, because it does not aver eviction by paramount title, nor by whom the eviction was made. But even if there was an eviction by paramount title it would be no defense to this action. Such plea would be good in an action for rent, as to the value of the portion from which a tenant is

evicted. (Taylor's Landlord and Tenant, p. 183; 3 Kent's Commentaries, p. 464.)   But not in a suit for possession.

A tenant in common has no title *paramount* to that of his co-tenant, and unless eviction by paramount title, a tenant cannot dispute the title of the lessor under whom he holds. (*Binney* v. *Chapman*, 5 Pick. 126; *Boston* v. *Binney*, 11 Ib., 9; *Morse* v. *Goddard*, 13 Met. 179; *Cobb* v. *Arnold*, 12 Ib., 43; *Inhabitants of Watertown* v. *White*, 13 Mass. 481; *Codman* v. *Jenkins*, 14 Ib., 95; *George* v. *Putney*, 4 Cush. 354.)

*Sixth*—The second instruction given at request of plaintiff is correct. The averments of the complaint therein referred to, as admitted by the answer, are material averments. (Practice Act, 1861, sec. 651.)

*Seventh*—The fourth instruction given at request of plaintiff is correct. ( *Vide* authorities cited in support of point 5th.)

*Eighth*—The first instruction asked for by defendant was properly refused. The plaintiff's allegation of damages is not denied in the answer. (*McLaughlin* v. *Kelly*, 22 Cal. 222; *Thompson* v. *Lee*, 8 Ib. 280.)

*Ninth*—The defendant was not prejudiced by the refusal to give the second instruction asked for by defendant, because the answer admits the demand of rent on the day that it became due. (*Burke* v. *Table Mountain Water Co.*, 12 Cal. 407.)

*Tenth*—The Court did not err in withdrawing its own instruction from the consideration of the jury.

Undoubtedly the Court may at any time during the progress of a trial, correct any error committed by itself. It would have been error to have allowed the instruction to remain with the jury, because the answer admits the monthly rents of the premises to have been four hundred dollars. The plea that plaintiff agreed to receive two hundred dollars per month is bad; it does not state facts sufficient to create a lease, but is simply an allegation of matter by which defendant seeks to vary the terms of a written instrument. (1 Van Santv. Pl. 235.)   But the plea does not even aver a performance of the conditions stated, and therefore cannot avail the defendant.

*Eleventh*—The judgment for twelve hundred dollars, *non obstante veredicto*, was properly granted.

The answer admits four hundred dollars per month to be the rent of the premises by the terms of the lease ; and admits, by failing to deny, legally, that four hundred dollars was due 7th September, 1864, four hundred dollars on 7th October, 1864, and four hundred dollars on 7th November, 1864.   Also admits that the premises are of the rental value of ·four hundred dollars per month, and does not deny the allegation of the complaint of twelve hundred dollars damages for detention. (Practice Act, secs. 46 and 65 ; *Hensley* v. *Tartar*, 14 Cal. 509 ; 1 Van Santv. Pl. 450 ; *Burke* v. *Table Mountain Water Co.* 12 Cal. 407 ; 1 Van Santv. Pl. 427, 428, 353.)   The jury should therefore have found, if for any amount, for twelve hundred dollars.   (*McLaughlin* v. *Kelly*, 22 Cal. 223) ; and the Court properly rendered judgment for that sum, *non obstante*.   (1 Bouv. Law Dict., word " Judgment," 31, 32 ; *Heele* v. *Andrus*, 6 Cow. 230.)

Opinion of the Court by Justice BEATTY, full Bench concurring.

This was an action brought under the Forcible Entry and Detainer Act, for an unlawful holding over of a tenant.   The complaint substantially alleges that plaintiff leased certain premises to defendant for a period of one year, from the 7th of April, 1864, to the 7th of April, 1865, for the sum of four thousand eight hundred dollars, which rent was to be paid in installments of four hundred dollars each month in advance. That the monthly rents falling due on the 7th of September, 7th of October and 7th of November, respectively, were not paid, and that a demand was made on each of these days for the respective sums falling due on such days.   ·That on the 18th day of October, 1864, a notice was served on defendant, requiring him to deliver up possession of the premises described or pay the rent then due.   That this demand was not complied with, and defendant still retains possession.   That the rental value of the premises is four hundred dollars per month, and the defendant retains the same to the damage of plaintiff in the sum of twelve hundred dollars.

The answer admits the execution and acceptance of lease ;

denies an *indebtedness* to the plaintiff of twelve hundred dollars, or of four hundred dollars per month for rent. Denies that a demand was made for the rent on the 7th of September, October or November, *as alleged* in the complaint. Avers that one Walter was a tenant in common with plaintiff of the premises leased, and pleads a *mis*-joinder [non-joinder] of parties in not making Walter a plaintiff. Avers that, on the 7th day of July, 1864, a verbal agreement was made with plaintiff that the rent should be reduced from four hundred dollars to two hundred dollars per month, and that the July and August rents were paid at that rate. Answer further avers that in August, 1864, Max Walter evicted defendant from a portion of the rented premises. That Walter was tenant in common and part owner with plaintiff of the premises, and avers upon information and belief that said eviction was made with the connivance of plaintiff, and avers that the part from which he was evicted was worth two hundred dollars per month. There are some additional averments in the answer that cut no figure in the case. The case was tried before a jury, and the jury found for the plaintiff, assessing his damages at seven hundred and fifty dollars. The Court, on motion of plaintiff, set aside so much of the finding as assessed the damages at seven hundred and fifty dollars, and assessed the same at twelve hundred dollars, on the ground that the amount of damages were not denied by defendant. The Court then ordered judgment for restitution and treble damages, to wit: three thousand six hundred dollars. After judgment, defendant made a statement on motion for new trial. The Court made an order granting the new trial unless plaintiff would remit twenty-four hundred dollars of the damages. This the plaintiff did, and the new trial was then refused. The case comes to us on appeal from the judgment and from the order refusing a new trial. There is in the transcript what purports to be a statement on motion for new trial, but none on appeal. Appellant makes a great many points which we shall have occasion hereafter to notice.

Respondent objects that this Court cannot look into any of the alleged errors that do not appear on the judgment roll. That which purports to be a statement on motion for new trial

is not a statement, and should not be treated as such by this Court, because it does not comply with the requirements of Section 195 of the Practice Act. That section provides that when a new trial is moved for, it shall be on affidavits or " a statement of the grounds upon which he (the moving party) intends to rely."

This statement contains the evidence, instructions, a statement of the rulings of the Court on several points, etc., but does not state or in any manner designate the points on which the defendant will rely on his motion for a new trial. If we turn back to the notice of intention to move for new trial, we find that notice informs plaintiff that defendant will move for a new trial upon the following grounds : " Insufficiency of the evidence to justify the *evidence* [verdict] and judgment, and that it is against law. Errors of law occuring at the trial and excepted to by the defendant."

If we consider the preliminary notice as a part of the statement on motion for new trial, it does contain a kind of statement of the grounds relied on. But even then the statement is too general to be of any value. It is not such a statement as was contemplated by the statute. Undoubtedly it was the intention of the statute to require a statement to be made showing the error complained of with such precision as to enable the parties litigant to prepare a statement which should contain so much of the evidence and history of the trial as would be necessary to explain the contested points and no more. Such is undoubtedly the proper practice, but one seldom followed by the profession. In nine cases out of ten when there is a statement in the record, it comes here encumbered with a mass of evidence having no relevancy to the errors assigned. Such statements increase the labor of counsel, the expenses of litigants, and are a source of vexation and annoyance to the Court. We would gladly correct this loose and irregular practice. But as the statute does not expressly attach any penalty to parties failing to make proper statements, we think the ends of justice better attained by treating this statute as merely directory, and tolerating, whilst we disapprove such loose and irregular statements.

This was the practice pursued in California for some eight

or ten years under an Act similar to ours. The Court finally adopted the rule there of not examining such statements rather as a matter of necessity than of choice. The press of business in that Court prevented them from having time to examine such irregular transcripts. Under this pressing necessity they were compelled to adopt very stringent rules for enforcing this direction of the Practice Act. The Legislature subsequently amended the Practice Act, so as to aid the Court in carrying out its rulings on this subject. We shall not for the present refuse to examine records for such irregularity in the statement on motion for new trial or appeal, but may deem it incumbent on us to make some rule which will enforce a more strict compliance with the statute. The first error assigned by the appellant is in these words: " The District Court in the absence of any statute applying to and governing this class of cases in respect to that Court could not entertain jurisdiction of the action."

The Constitution itself confers jurisdiction on the District Courts in this class of cases. Immediately after the Constitution went into effect, the District Courts, by virtue of that instrument, had jurisdiction of all cases of this class. (See Section 6 of Article VI.) No legislation was necessary to give jurisdiction. The Practice Act of the former Territory, which remains in force, provides the general method of proceeding in the District Court. But it is urged that the action of "forcible entry and unlawful detainer" is not known to the common law, and therefore the District Court cannot proceed in the trial of such a cause without some statute defining the action, stating the facts which must be proved and the judgment to be rendered, etc., on the proof of these facts. That we have no such law because our statute only authorizes Justices of the Peace, when such and such facts exist, to render certain judgments.

A part of this proposition is undoubtedly correct. Although the jurisdiction of the District Courts is established by the Constitution over cases of forcible entry and detainer, yet if the common law does not show what is the character of such an action, and we had no statute in force when this suit was brought defining the nature of the action, of course the Court

could not exercise its jurisdiction. The Court could not make a law to govern the action of forcible entry and detainer, it could only declare and enforce an existing law. We think, however, the latter part of the proposition is untenable. Our Act first prohibits forcible and unlawful entries. Then, in a separate section, it authorizes Justices of the Peace to inquire into such violations of law, and directs the mode of proceeding in such inquiry. The prohibition of these Acts is independent of the claims conferring jurisdiction, and directing how it shall be exercised.

Section 647 of the Act shows what facts shall be proved to constitute the offense, and what shall be a good defense to the action. This section is by its terms certainly applicable to any Court which might have jurisdiction of the case. These sections, then, defining the offense and the evidence are certainly not incompatible with the Constitution, are now in force, and with the aid of the general Practice Act would perhaps be all that would be necessary to enable the Court to exercise its jurisdiction in cases of "forcible entry."

Section 648 directs what judgment *a Justice* may enter after hearing the evidence or receiving the verdict of a jury. Although the language of this section is such as to confine it when taken literally to Justices, we think, taking the statute and Constitution together, the two may be fairly interpreted so as to authorize the particular class of judgments described in section 648, to be rendered by any Court having jurisdiction of the case.

Section 651 defines unlawful detainers of the kind complained of in this action, points out the method of proceeding in such cases, shows what facts shall be proved to sustain the action, etc. The section then provides that upon complaint to a Justice, the Justice shall proceed to hear, try, etc. This section, like section 648, is, when construed literally, inapplicable to the state of things existing when the new Constitution went into effect. But, to carry out the intent of that Constitution, we must substitute " Courts having jurisdiction" for Justices. We think so much of the law as defines the forfeiture, etc., is in force. That part of it which directs what Court shall assume jurisdiction is suspended and altered by the Constitution.

The second error assigned is in these words : " If the District Court had power originally to entertain the case, it lost that power by the repeal of the Act of 1861, concerning forcible entries and unlawful detainers."

It is claimed that the repeal of the former Act *ipso facto* abrogates all proceedings being had thereunder, and deprives plaintiff of all right to recover in this proceeding.

He cannot recover, it is contended, under the old law, because it is repealed ; nor under the new, because it is prospective in its operation.

The repeal of a criminal or penal law certainly arrests all proceedings thereunder. So far as this law partakes of a criminal character, no doubt its operation is suspended and annulled by the repeal. No fine could be imposed by a Court in a case which was commenced under the old law and tried after its repeal. But, in regard to the civil rights acquired under the provisions of the former law we apprehend a different rule prevails. The repeal of a law, it is said, obliterates it from the statute book, as if it had never been there ; but there are some, we might say many, exceptions to this general sweeping effect ascribed to the repeal of the statute. We need only notice one exception. If a right has been acquired by contract under the provisions of a statute, a repeal of that statute will not divest the right. Indeed, it could not have such an effect without a violation of the Constitution of the United States. (See Sedgwick on Statutory and Constitutional Law, page 133, and cases there cited.) This case comes within that very exception. Here, by the terms of the lease, and in virtue of the law existing when it was executed, the lessor is entitled to have that lease abrogated and set aside, and be restored to the use of his property on the failure of his tenant to pay rent. Appellant contends that the right to be restored to his property is taken away by a repeal of the Act under discussion.

The repeal of a statute has never been held to produce such an effect even in England. Under the restrictions of our National Constitution, it could not produce such an effect. Appellant's point is untenable.

The next point relied on is that the Court erred in refusing

to grant a non-suit on motion of defendant. The defendant claimed that he was entitled to a non-suit because there was no proof of demand made for rent, either on the 7th of September or October. The respondent claims there was no necessity for proof because there was no sufficient denial of the allegations of the complaint. The Court is so unfortunate as to differ with both counsel on this point. We think the denial in the answer is sufficient to raise an issue of fact. The demand is simply alleged to have been made on a certain day. The denial is " that the demand was not made on that day, as alleged." It is argued that the words " *as alleged*" qualify the answer so as to make it a negative pregnant.

Had the allegation of the complaint been that the demand was made in some particular manner, as that it was made on the premises at a late hour of the day, etc., then the words, " *as alleged*," might be considered as referring to the manner and not the fact of a demand. But as there are no qualifying circumstances accompanying the demand as averred, we think the words, " *as alleged*," should be treated as mere surplusage, and the denial as good.

But whilst we hold the denial was sufficient, we are of the opinion that the allegation was unnecessary, and need not be proved. Under the rulings of the California Courts on a similar statute, it has been held that the demand for rent must be made not only on the day that the rent falls due, but at a late hour of the day.

If part of this rule is good, doubtless all of it is; and plaintiff must have failed for not proving or alleging the hour at which the demand was made. But we hold that the statute does not require any demand to be made but one—that is, the written demand, to be made after rent has been three days past due. That was clearly averred in the complaint, and not denied. We think the ruling of the California Courts in regard to the necessity of making a formal demand for rent at a certain hour of the day it becomes due, is in violation of the letter of the statute, tends to produce confusion, delay, an increase of litigation, and to defeat the very objects of the statute, which appear to be laudable and just.

The Courts of California have intimated that they were not

satisfied with their earlier interpretation of this statute, and the Legislature of that State has so amended their statute as to make it mean beyond mistake what we think it meant when it was first passed. ,The second instruction, given at request of plaintiff, is technically wrong, because it instructs the jury that the failure to answer certain averments, among others, that plaintiffs were entitled to the possession of the premises sued for, etc., are conclusive against defendant. The answer must deny all *material facts* stated in the complaint. It is not necessary to deny mere conclusions of law. It is sometimes difficult to say whether an allegation in a complaint is a mere averment as to a conclusion of law, or whether it also contains some averment of a material fact. It is, therefore, not improper in a pleader, out of abundance of caution, to deny all the material allegations in a complaint which are untrue, although some of them may be rather conclusions of law than facts from which such conclusions of law are to be drawn.

But when the pleadings contain a fair issue as to facts, the mere failure to deny legal conclusions should not prejudice the defendant. In this case certain facts are stated by plaintiff, and from the existence of those facts he avers, as his conclusions of law, that he is entitled to the possession of the premises sued for. The defendant answers and does not deny any material allegation of the complaint, but does set out some matters in avoidance. These matters defendant was entitled to prove, and if proved, they were a defense *pro tanto*.

That portion of the fourth instruction, given at request of plaintiff, which is in these words: " The title of a tenant in common is not paramount to that of his co-tenant," was calculated to mislead the jury, and was erroneous.

That sentence contains a proposition *literally* true but wholly inapplicable to this case. The text books lay down the general proposition that a tenant can only plead an eviction by *paramount* title as an excuse for the non-payment of rent. The words "*paramount title*," are used in such cases in a general and not technical sense, to distinguish an eviction by one having lawful authority to hold as against the tenant from an eviction by a mere trespasser. If a tenant is evicted by a trespasser, the law affords him the means of being reinstated.

It is his duty to resort to that remedy. He cannot refuse to pay his rent because of a wrong done to him or his possession by a stranger. But if he is evicted by one who has the right of possession, one against whom the defendant could not maintain an action to recover back the possession, then he is excused from paying his rent. Here, according to the averments of the answer, the tenant was in possession of the whole premises by virtue of a lease from one tenant in common. The other tenant in common takes possession of a portion of the common property. If there was no force or fraud used by the tenant in common in getting possession of his portion, we do not see how the tenant could recover of him. If the tenant could not recover, certainly he is not bound to pay rent for the premises of which he does not hold possession.

There was no error in refusing instructions No. 1 and 2 asked by defendant. The answer admits the amount of rent agreed to be paid. Plaintiff was entitled to recover to that extent without proof, provided defendant showed nothing in avoidance. As to the point embraced in second instruction, we have already held that no demand for rent was necessary.

The Court below also erred in ruling out the evidence concerning eviction by Max Walter. It is not very clear from the statement that at the time of the eviction, Max Walter was a tenant in common with the plaintiff. It is at least probable he had sold his interest to Thomas Walter. The statement does not, however, show this positively. There is some evidence in the statement as it comes to us that Max Walter was still a tenant in common in the property. If there was any testimony showing that he was a tenant in common, or that he was acting as the agent of Thomas Walter, a tenant in common, the evidence should have gone to the jury.

The allegations of the answer as to an agreement for the reduction of rent do not amount to a defense. There does not appear to be any consideration for the agreement. Doubtless where there is an agreement under seal, that agreement may be superseded by a new agreement not under seal after the latter agreement has been executed in whole or in part. But it must be a new agreement based on some good and valid consideration. Here there is an agreement under seal to pay

four thousand eight hundred dollars for one year's rent of certain premises, payable in twelve monthly installments of four hundred dollars each. It is alleged there was subsequently an agreement on the part of the landlord to accept two hundred dollars per month in lieu of the four hundred dollars. There is no allegation of any consideration for this agreement. It is not shown that defendant bound himself to surrender his lease at the end of a shorter term, or to pay rent for a longer term, or to perform or refrain from doing any act in consideration of the change. It amounts simply to a promise on the part of the plaintiff that he will accept two hundred dollars instead of four hundred dollars—a promise made without consideration and void.

It results from the views expressed in the foregoing opinion, that on the pleadings alone without proof, plaintiff is entitled to recover so much of the premises sued for as are in possession of the defendant. What amount of damages plaintiff is entitled to recover is a question of more difficulty. The question is, shall a plaintiff in a case of this kind recover treble or single damages? Section 648 of the Practice Act provides, that in cases of this kind where the defendant is found guilty the Justice shall render judgment of restitution in favor of plaintiff; shall impose a fine on defendant; shall tax costs for plaintiff and issue execution and writ of restitution.

Section 650 provides that the Justice shall render judgment for the plaintiff for treble the damages assessed by the jury. The authority for rendering the different parts of the judgment are thus separated into two sections, with one section intervening. Section 651 provides for cases where a tenant holds over, and the proper steps have been taken to terminate the lease, and concludes thus:

"The Justice shall proceed to hear, try and determine the same, in the same manner as in other cases hereinbefore provided for, but shall impose no fine upon any such case mentioned in this section."

The question is whether the words "proceed to hear, try, and determine the same," has reference to the manner of proceeding, trying, etc., as provided in 648 only, or in 648 and 650. Judging from the language used, it would seem that

these words must refer to both the preceding sections. In fact, without it does so, there would seem to be no authority given to Justices for entering any money judgment in cases of this kind, except for costs. The words of exception, "but shall impose no fine upon any such case," seem to indicate that there should be no other difference in other respects between a judgment for forcible entry and unlawful holding over. These seemed to us at first view almost irresistible reasons for coming to the conclusion that the plaintiff in such cases was entitled to treble damages; but if the plaintiff is entitled to treble damages, for what space of time are those damages to be trebled? Suppose A, on the 1st day of January, leases a house to B for twelve months, at one hundred dollars per month, the rent to be paid monthly in advance. The first month's rent is paid, then for six months nothing is paid, the landlord being satisfied as to the tenant's solvency, and taking no steps to create a forfeiture. On the 1st day of August the landlord demands the rent that day due; it is not paid, and on the 4th he makes the written demand for the surrender of the premises or the payment of the rent due. On the 8th day of August suit is brought. What damages are to be trebled? It has been held in California, under a statute from which ours was copied, that rent which fell due for a period of time antecedent to that when the rent was demanded could not be recovered in this action. That prior to the demand for rent the tenant was not wrongfully in possession, and therefore the rents could not be recovered as damages in an action for wrongful holding over, but only in an action upon contract, such as debt, covenant, assumpsit, or some similar action. (See *Howard* v. *Valentine*, 20 Cal. 282.) Then in the case put, if this authority be right, no rents prior to August could be recovered. What rents could be recovered and trebled after August? The demand of rent is made the 1st of August. Then a second and written demand for rent or possession is made the 4th. At the close of the 7th the forfeiture becomes complete, and relates back to the 1st. The suit is brought on the 8th. Is the plaintiff entitled to recover three hundred dollars, which would be treble the rent agreed to be paid in advance for the month of August, or treble the value of the property for the first seven

days of August, during which he has wrongfully held over?
We cannot answer this question from the reading of the
statute. But we have held that a special demand of the rent
at the very time it falls due is not necessary.

Can it be held that in the case put, if, after the payment of
rent in January, the landlord should fail to demand any rent
until the 4th of December, he could then demand an immediate
surrender of the premises, or the payment of eleven months'
rent? and in case the tenant was unable for three days to com-
ply with this demand, to treat the tenant as a trespasser since
February and recover treble rents for eleven months? It can
hardly be supposed the Legislature intended anything of the
kind. Many other cases might be put, presenting equal diffi-
culties as to the application of this law to cases that might
arise. Whilst, then, we think the Legislature has used lan-
guage which would seem to indicate that in some way treble
damages were to be recovered from tenants holding over, the
statute has utterly failed to show what damages should be
trebled. Under, then, the well known principle that penalties
and forfeitures will not be extended by implication and doubt-
ful construction, we feel justified in holding that this section
does not authorize treble damages in any specific class of cases,
and no such judgment can be rendered against a tenant hold-
ing over. If there can be no treble damages, this case is
relieved of many of its difficulties. The pleadings show, either
by direct admissions or failure to deny allegations of complaint,
that the premises were rented for four hundred dollars per
month; that no rent for the months of September, October
and November was paid or tendered; that proper demand was
made, and the premises were not delivered to the landlord.
These facts make a *prima facie* case, entitling plaintiff to
judgment for restitution and twelve hundred dollars dam-
ages; but there is an allegation by defendant that during
all the period of these three months he was deprived of the
possession of a part of the premises leased, which part was
of the monthly value of two hundred dollars, and that this
evic tion was by a tenant in common of his landlord. If
this defense can be sustained by the defendant, he will be
entitled to a credit or deduction of six hundred dollars

from the twelve hundred dollars, for which judgment was rendered.

Defendant was deprived of the opportunity of making this defense, and therefore is entitled to a new trial, unless the plaintiff should be willing to remit or release six hundred dollars of the damages recovered. If the plaintiff will remit the damages to that extent, the judgment will be affirmed, otherwise the order of the Court below refusing a new trial must be reversed and the case remanded.

If within ten days after the publication of this opinion the plaintiff in the Court below will file with the Clerk for the use of the defendant, a release from six hundred dollars of the damages recovered, and also a consent that appellant's costs in this Court shall be credited on the judgment in favor of respondent, and have the same certified to this Court, then the judgment of the Court below will be in all things affirmed. Otherwise the Clerk of this Court, at the expiration of said ten days, will enter an order reversing the order of the Court below, refusing a new trial, and remanding this cause for further proceedings.